# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RODNEY W. PAYNE, JR., <br><br> Plaintiff, <br><br> v. <br><br> GARY LOCKE, Secretary, United States Department of Commerce, <br><br> Defendant. | Civil Action 09-01808 (HHK) |

## MEMORANDUM OPINION AND ORDER

Rodney Payne brings this action against Gary Locke, Secretary of the United States Department of Commerce ("Secretary"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Payne alleges that gender discrimination motivated the decision of the Department of Commerce ("Department") not to hire him for a position in the Department's Office of Inspector General. Before the Court is the Secretary's motion to dismiss, or in the alternative, for summary judgment [#3]. Upon consideration of the motion, the opposition thereto, oral arguments made by counsel, and the record of this case, the Court concludes that the motion must be denied.

## I. BACKGROUND

Payne, a man, applied for the position of Lead Information Technology Specialist within the Department's Office of Inspector General and was twice interviewed for the job in October 2006. Compl. ¶¶ 10–14. Payne was not offered the position, which was instead filled by a woman. *Id.* ¶¶ 13–17. Payne alleges that on November 8, 2007, Thomas Phan, the Deputy

Assistant Inspector General, "admitted" that Payne was more qualified for this position than the woman who was hired and told him that gender bias had influenced the hiring decision. *Id.* ¶¶ 23–25.

Payne discussed his complaint with an equal employment opportunity ("EEO") counselor on December 17, 2007. Def.'s Mot. to Dismiss, Ex. A at 2–3. He filed a formal complaint with the Department on January 2, 2008. Compl. ¶ 3. On June 6, 2008, 156 days after Payne filed his complaint and after an investigation of the complaint had been completed, Payne requested a hearing before an administrative judge ("AJ"). Def.'s Mot. to Dismiss, Ex. M at 1.

On August 28, 2008, 239 days after Payne filed his complaint, the AJ assigned to Payne's case issued an order that, among other things, set forth a discovery schedule. Def.'s Mot. to Dismiss, Ex. E. The order required that discovery be completed by 70 days from the receipt of the order. *Id.* at 2. Accordingly, the parties exchanged discovery requests in September 2008, submitted responses, and in December 2008 the parties identified alleged deficiencies in each others' initial written discovery responses. Def.'s Mot. to Dismiss, Ex. F at 2, 16. On December 31, 2008, 364 days after the filing of Payne's complaint, the AJ issued an order staying discovery pending the outcome of a scheduled settlement conference. Def.'s Mot. to Dismiss, Ex. N at 1.

The settlement discussions were not successful, and on February 17, 2009, the AJ issued an order providing for discovery to close on April 3, 2009. Def.'s Mot. to Dismiss, Ex. F at 3. Soon thereafter, the parties engaged in a series of communications that the Secretary contends demonstrate that Payne ceased to cooperate in the discovery process and abandoned the administrative proceedings. Def.'s Mot. to Dismiss at 3. On February 27, 2009, counsel for the Secretary left a voicemail message and sent an email to Payne's attorney that indicated that the

parties would need to address the pending discovery disputes if a settlement was not reached. Def.'s Mot. to Dismiss, Ex. F at 3. The Secretary's counsel also indicated that she wished to schedule depositions. *Id.* Payne's attorney responded the same day to say that he was declining the settlement offer and that he would determine Payne's availability for a deposition. *Id.* Five days later, on March 4, 2009, the Secretary's counsel sent notice to Payne's attorney for a deposition date and asked that Payne's attorney confirm that date. *Id.* The Secretary's counsel also asked that Payne cure her objections to his discovery responses. *Id.* at 3–4. After another six days, during which the Secretary's counsel did not receive a response, she filed a motion for sanctions with the AJ. *See generally id.* On March 11, 2009, a day after the Secretary's motion, Payne's attorney contacted the Secretary's counsel to request that Payne's deposition be postponed until the last week in March. Def.'s Mot. to Dismiss, Ex. G at 3. On March 16, 2009, the Secretary's counsel sent an email to Payne's attorney complaining about being unable to meaningfully depose Payne without first having received amended discovery responses. *Id.* After not receiving a response for three days, the Secretary submitted a renewed motion for sanctions. *See generally id.*

The following week was an eventful one. On March 24, 2009, the Secretary filed another notice of Payne's deposition, and, a day later, received an email from a law clerk for Payne's attorney requesting to schedule the deposition and indicating that she had not received the notice of the deposition. Def.'s Mot. to Dismiss, Ex. H at 3–4. (The Department suggests that Payne must have received the notice because the Department's attorney received a fascimile confirmation sheet. *Id.* at 4.) Counsel for the Secretary re-sent the notice of the deposition, but did not receive a response confirming the deposition date. *Id.* at 4. Two days later, during a

3

March 26, 2009 telephone conference call with the AJ and counsel for both parties, Payne's attorney stated that Payne wished to withdraw his complaint in order to prosecute his claims in federal court. *Id.* That same day, the Secretary filed a third motion for sanctions with the AJ. *See generally id.* It is undisputed that Payne did not file oppositions to any of the three motions for sanctions.

Payne's complaint finished its journey through the administrative process with an order filed by the AJ on March 27, 2009 in which the AJ dismissed the case and remanded it to the agency for final disposition. Def.'s Mot. to Dismiss, Ex. K at 1. The Department issued a final agency decision ("FAD") on June 24, 2009.

## II. ANALYSIS

The Secretary moves to dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment. Because the Court relies upon materials outside of the pleadings, the Court treats the Secretary's motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d) (providing that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"). Summary judgment is proper if it is shown that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Title VII requires that the federal government's personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Federal employees and applicants for employment may enforce Title VII's ban on discrimination in federal court. *Id*. § 2000e-16(c). Before doing so, however, they are required

4

to exhaust their remedies through the administrative process. *Id.* § 2000e-16(c)*; Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997).

In order to exhaust a discrimination claim, a federal employee or applicant for employment must consult with an agency EEO counselor before filing a written complaint with the agency alleged to be engaging in discrimination. *See* 29 C.F.R. § 1614.105(a). The agency then conducts an investigation of the allegations, *see id.* § 1614.106(e)(2), after which the employee or applicant has a choice: she may request that the agency make a final decision immediately, or she may elect to have a hearing before an administrative judge prior to the agency's final action. *Id.* § 1614.108(f), 1614.110(a). Employees and applicants may file suit in federal district court "[w]ithin 90 days of receipt of the final action . . . ," or 180 days after filing their complaint. *Id.* § 1614.407(a)–(b).

"Exhaustion under Title VII demands a 'good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information.'" *Mills v. Billington*, 2006 WL 1371683, at *4 (D.D.C. 2006) (quoting *Crawford v. Babbit*, 186 F.3d 1322, 1326 (11th Cir. 1999)). Good faith may not be found where a complainant refuses to cooperate with the administrative process by, for example, withholding relevant information from an agency during an investigation. *Id.* Failure to cooperate can result in losing the right to sue in federal court. *See, e.g.*, *Wilson v. Pena,* 79 F.3d 154, 164–65 (D.C. Cir. 1996) (observing that "[i]f a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit"); *Smith v. Koplan*, 362 F. Supp. 2d 266, 268–69 (D.D.C. 2005) (holding that the plaintiff

5

failed to exhaust because she "abandoned the administrative process [and] did not comply with the discovery proceedings before the EEOC administrative judge").

The Secretary contends that he is entitled to summary judgment because Payne failed to satisfy the exhaustion requirement. In particular, the Secretary argues that Payne's "refus[al] to participate and cooperate in the discovery process" while his complaint was before the AJ constitutes an abandonment of the administrative process and a failure to exhaust his administrative remedies. Def.'s Mot. to Dismiss at 10. Payne counters that he did not abandon the administrative process and that he is therefore entitled to bring this action.

Payne's argument is well taken, as there is no evidence that Payne failed to cooperate or in any way abandoned the administrative process during the 180 days following the filing of his complaint. That time period is significant because, by statute and regulation, complainants may bring suit in federal court 180 days after filing a formal complaint. *See* 42 U.S.C. § 2000e-16(c) (providing that federal employees may file a civil action 180 days after filing a charge with their agency or the EEOC); 29 C.F.R. § 1614.407(b) (providing that a complainant "is authorized . . . to file a civil action . . . [a]fter 180 days from the date of filing an individual or class complaint"). The 180-day provision is designed to provide "prompt access to the courts in discrimination disputes," a purpose that "is so important that the administrative process will be given only a finite time to deal alone with a given dispute." *Wilson*, 79 F.3d at 167 (quoting *Grubbs v. Butz*, 514 F.2d 1323, 1328 (D.C. Cir. 1975)).

It is therefore not surprising that recent opinions in this judicial district have recognized that federal employees may seek judicial review after their discrimination claims languished for more than 180 days at the administrative level. *See, e.g.*, *Augustus v. Locke*, 699 F. Supp. 2d 65,

71–72 (D.D.C. 2010); *Abdelkarim v. Tomlinson*, 605 F. Supp. 2d 116, 120 (D.D.C. 2009); *Brown v. Tomlinson*, 462 F. Supp. 2d 16, 19–20 (D.D.C. 2006). In *Brown,* for instance, the court applied 29 C.F.R. § 1614.407 to allow the plaintiff to proceed in court despite the fact that the plaintiff had missed discovery deadlines, the administrative judge had ruled that the plaintiff had not been timely in initiating discovery, and the plaintiff had withdrawn his complaint from the EEOC on the date that his discovery requests were due. *Id.* at 18. In so allowing, the court vacated its earlier decision dismissing the plaintiff's case for alleged failure to cooperate. The court noted that "through no fault of plaintiff's, discovery in connection with the administrative hearing did not begin until . . . more than 270 days after the filing of the initial complaint," and that "[t]here is no evidence that plaintiff failed to cooperate with the agency's investigation prior to that time." *Id.* at 20. The court then considered whether the plaintiff's failure to cooperate during the discovery process—that is, during the period after which more than 180 days had elapsed from the filing of the complaint—obviated the plaintiff's right to file in federal court. After examining the language of 29 C.F.R. § 1614.407, the court concluded that the exhaustion requirement had been satisfied because 180 days had passed. *Id.* at 21.

Here, the Secretary complains of Payne's cooperation beginning on February 27, 2009, when the Secretary's counsel left voicemail and email messages for Payne's attorney that the Secretary complains were inadequately answered. Def.'s Mot. to Dismiss, Ex. F at 3. At that point, however, 422 days had passed from the time Payne filed his charge.[1] Even if the Court

---

[1] At oral argument, the Secretary suggested that it is unhelpful to examine whether Payne cooperated in the case for the 180 days after his complaint was filed because Payne's case was stayed for part of the time it sat at the administrative level. As set forth above, however, the case was not stayed until December 31, 2008—364 days after the filing of Payne's complaint. Def.'s Mot. to Dismiss, Ex. N at 1. The fact that the case was stayed therefore does not undercut

7

were to agree with the Secretary's description of Payne's behavior as uncooperative (which, as discussed below, the Court is not willing to do), such behavior still would not impede Payne's right to proceed in federal court, as the "case law does not suggest that good faith participation must extend past 180 days." *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 602 (E.D.N.Y. 2010); *see also Wilson*, 79 F.3d at 166 ("Once a complainant files a complaint or appeal and cooperates with the agency or EEOC for 180 days, he is not required to take any further action to exhaust his administrative remedies."); *Brown*, 462 F. Supp. 2d at 21 ("Failure to cooperate or dilatory behavior at that point [after 180 days from the filing of the complaint] in the administrative proceedings alone should not result in the loss of the right to file suit in district court.").

Nor should any negative inference be drawn from the fact that Payne withdrew his administrative complaint and requested a FAD. Guidance published by the EEOC "makes clear that a complainant may voluntarily withdraw a request for a hearing at any time." *Abdelkarim*, 605 F. Supp. 2d at 120 (citing Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110, 7–1 (Nov. 9, 1999)). Therefore, in *Abdelkarim*, the court allowed the plaintiffs to litigate in federal court where the plaintiffs had opted to proceed with an EEOC hearing, withdrawn from the hearing, and then received a FAD. *Id.*

One case the Secretary cites would suggest a different outcome. In *Wiley v. Johnson*, 436 F. Supp. 2d 91, 95 (D.D.C. 2006), the court held that an employee of the Environmental Protection Agency failed to exhaust his administrative remedies when he voluntarily withdrew his request for an EEOC proceeding so that he could seek judicial relief. The court reached this

---

the significance of the fact that Payne's level of cooperation is not disputed for at least the 180 days after Payne filed his complaint.

conclusion despite the fact that 180 days had passed from the time Wiley filed his complaint. According to the court, allowing Wiley to proceed would have frustrated the purposes underlying the exhaustion requirement—namely, providing Wiley's employer with notice of the claim, allowing the matter to be resolved internally, and relieving the courts from unnecessary litigation. *Id.* at 95. Because the *Wiley* opinion failed to consider the language in 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407 authorizing federal employees to bring suit 180 days after the filing of administrative complaints, this Court agrees with other courts that have reviewed the opinion and declined to follow it. *See Augustus,* 699 F. Supp. 2d at 70–72; *Laudadio*, 677 F. Supp. 2d at 600–02. The Court will instead apply the plain language of 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407 and allow Payne to proceed because more than 180 days elapsed between the filing of his complaint and his allegedly uncooperative behavior relating to the EEOC hearing.

Finally, the Court notes that while it is true that, in some cases, plaintiffs have been foreclosed from seeking judicial relief because they failed to cooperate at the administrative level, those cases "involved extreme situations in which 'the complainants rest[ed] on vague allegations of discrimination and refuse[d] to provide any details or dates, thus completely frustrating the agencies' ability to investigate complaints.'" *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 714 (D.C. Cir. 2009) (alterations in original) (quoting *Wilson*, 79 F.3d at 165). For instance, in *Jordan v. United States*, 522 F.2d 1128 (8th Cir. 1975), one of the cases on which the Secretary relies, the Eighth Circuit affirmed the lower court's dismissal of the federal action where the plaintiff's failure to cooperate was found to be the result of "deliberate choice" after the plaintiff admitted he disregarded his administrative remedies because he did not believe he would receive a fair hearing. *Id.* at 1132. In another case cited by the Secretary,

9

*Carmona v. O'Neill*, No. 01-0115, slip op. at 2–4 (D.D.C. Jan. 22, 2002), the plaintiff repeatedly refused to respond to an EEO officer's requests for information and refused to attend an interview. The agency was unable to complete its investigation and therefore dismissed the plaintiff's complaints. *Id.* at 4. In *Smith*, 362 F. Supp. 2d 266, also relied upon by the Secretary, the complainant failed to accept the administrative judge's invitation to submit written requests for deviations from a discovery order and did not contact the administrative judge or defendant to explain her absence. The unresponsiveness was so great that the EEOC administrative judge dismissed the claims and imposed monetary sanctions. *Id.* at 267.

Such extreme circumstances are not present in Payne's case. There is no indication that Payne deliberately chose to not cooperate with the administrative process. Nor is there any suggestion that Payne refused to cooperate in the agency's investigation such that the agency dismissed his complaint. Once his case went before an AJ, the AJ neither threw out Payne's complaint nor imposed monetary sanctions.

The Secretary complains of Payne's "refusal" to: confirm his attendance at deposition; cure his "deficient discovery responses;" "respond to Defendant's repeated attempts to communicate;" and respond to the three motions for sanctions that were filed before the AJ. Def.'s Mot. to Dismiss at 5. None of these alleged deficiencies are so egregious as to constitute an abandonment of the administrative process. With respect to the adequacy of Payne's discovery responses, the Secretary has not submitted any evidence that would allow the Court to evaluate whether Payne's answers were objectively deficient (nor is it clear that it would be appropriate for the Court to do so). The Secretary is correct that Payne did not oppose the motions for sanctions. Payne's failure to submit memoranda in opposition to these motions,

however, need not be construed as Payne's abandonment of administrative remedies, as there is no evidence that Payne prevented the administrative process from moving forward.[2] The Secretary's complaints about Payne not confirming a deposition date are more troubling. Once the AJ set April 3, 2009 as the deadline for the close of discovery, the Secretary was within his rights to want to settle on a date for Payne's deposition. Even so, the longest amount of time Payne's attorney took to respond to the Secretary's counsel was seven days—not exactly prompt, but also not delinquent—and there is evidence that Payne's attorney might not have received one of the notices of the proposed deposition date. Interpreting these events in the light most favorable to the non-moving party, as the Court must do on a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), Payne was not nearly as uncooperative as were the plaintiffs in *Jordan*, *Carmona* and *Smith*. Thus, even if the disputed events had occurred within the 180 days after Payne filed his complaint, the Court would not deem Payne's behavior sufficiently uncooperative to warrant dismissing this litigation. The Secretary's motion for summary judgment must therefore be denied for this additional reason.[3]

---

[2] The sheer number of motions for sanctions might suggest an extreme level of obstinacy on the part of Payne. The mere fact that so many motions were filed, however, does not persuade the Court that Payne should be foreclosed from seeking judicial relief. The Secretary filed the third motion *after* Payne's attorney informed the Secretary of Payne's intent to withdraw from the administrative process. In addition, the second motion was filed before the deadline for responding to the first motion had expired.

[3] Although the Court agrees with the outcome advocated by Payne—that he be allowed to proceed with this case—the Court does not agree with some of the reasons Payne puts forward for reaching this result. Specifically, the Court does not base its decision on the fact that the agency was able to reach a final decision on the merits, a fact that Payne suggests should be dispositive. As the Secretary correctly points out, the applicable regulations required the Secretary to issue a FAD. *See* 29 C.F.R. § 1614.110(b) (providing that agencies "shall" issue final decisions when they receive such a request).

## III. CONCLUSION

For the foregoing reasons, it is this 2nd day of March 2011, hereby

**ORDERED** that the Secretary's motion to dismiss or, in the alternative, for summary judgment [#3] is **DENIED;** and it is further

**ORDERED** that the clerk of the court shall schedule an initial status conference as soon as the business of the court permits.

Henry H. Kennedy, Jr.  
United States District Judge